M‘Kean,
 
 Chief Just
 
 ice:
 

 —It is essential to private justice and to public peace and order, that the rules of property, as well as of the other objects of society, should be settled and promulged. Wretched, indeed, is the condition of that people, where the law is either uncertain, or unknown.
 

 In the present cause, it appears, that, in the year 1767,
 
 Hugh Mc Curdy,
 
 the plaintiff, having obtained a location for 200 acres, desired that a survey might be made by the proper officer; who, accordingly, surveyed the tract in question, amounting to 157 acres. On this tract, the plaintiff actually entered, and enjoyed, for a length of time, a peaceable possession. He also improved It, by first erecting a Cabbin, then a House; and afterward a Barn; and by clearing and cultivating 2 acres of meadow, 40 acres of arable land, and an Orchard with 40 or 50 Apple Trees in it. The proof of these facts is certainly sufficient to maintain an action of Trespass for, the plaintiff had
 
 *99
 
 not only an actual, but a legal possession; and on payment of the purchase money to the former proprietaries, his legal title to the premises would have been perfected.
 

 For the defendant, however, it is stated, that he discovered the tract, of which the plaintiff’s survey is a part, in the year 1755; that at several times he erected a Cabbin, a Mill, and a Lime-Kyln upon it; that he cleared some of the land, and that he made a consentable line with a neighbour. But these circumstances the Court declare, will not constitute a legal title. Even in a state of nature they would confer no right to the 157 acres, within the plaintiff's survey ; for, on any part of those acres, it is not pretended, that the defendant has ever exercised any act of industry, or that he has even maintained a
 
 pedis possession.
 
 He made no inclosure, he cut no timber; nor, in short, in any form appropriated, or set apart, the premises in question, from the common mass of the circumjacent land. To assert, therefore, that he has acquired an exclusive title, is not less extravagant, than to suppose, that a whole river becomes the property of him who takes a pitcher of water out of i
 
 t,
 
 or that no other man is afterwards entitled to use any part of the water, which may happen again to fall from the pitcher into the stream. For, let me ask, what is the definition of an improvement ? Has it no quality, or form ? And is the quantity of land attached to it circumscribed by no limits
 
 .
 
 To these enquiries I have been unable to obtain a satisfactory answer.
 

 The owners of the soil of
 
 Pennsylvania
 
 were, originally, the proprietaries; and under their authority agents were appointed, to make sales and grants of particular tracts. If two or three persons claimed the same land, the agent had, in strictness, a power to grant it to which of the claimants he pleased; but if one of them had seated himself on the land, and by his own labour and money, had improved its value, the proprietaries and their agent always felt an equitable obligation to make the grant in favor of such possessor. If, however, the proprietaries who are the owners of it should not chuse to do so, the Court cannot interfere to controul, or regulate, the exercise of their undoubted territorial right. An attempt of that kind, would shake the very foundations of property; and render a verdict, or judgment, not a solemn determination on evidence and law, but an instrument of favour to the party, for whom the Court or Jury should entertain a predilection. But we must remember, that we are bound by an oath, to administer justice according to the laws, without partiality, or prejudice.
 

 Verdict for the Plaintiff.